IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM WITHERSPOON,
      Petitioner,

vs.                                Case No.:  4:17cv137/WS/EMT

MARK S. INCH,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's Second Amended Petition, filed pursuant to 28 U.S.C. § 2254 (ECF No. 30).  Respondent filed an answer (ECF No. 35) and relevant portions of the state court record (*see* ECF No. 26).  The court provided Petitioner an opportunity to file a reply (*see* ECF No. 36), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the

_____

[1] Mark S. Inch succeeded Julie Jones as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases. It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 26).[2] Petitioner was charged in the Circuit Court in and for Leon County, Florida, Case No. 2008-CF-3112, with four counts of kidnapping to facilitate a felony with a firearm and four counts of armed robbery with a firearm (Ex. A at 7–8). Petitioner was tried by a jury on all counts (Ex. B). When the State rested its case, Petitioner's trial counsel made a motion for judgment of acquittal ("JOA") on all counts (*id.* at 283). The trial court granted the motion with respect to three of the four robbery counts, on the ground that the evidence could support only one robbery (*id.* at 285). The jury found Petitioner guilty as charged of the four kidnapping counts and the remaining armed robbery count (Ex. A at 58–62). On August 24, 2010, the court sentenced Petitioner to concurrent terms of twenty-five (25) years in prison on all counts, with a 10-year mandatory minimum and pre-sentence jail credit of 727 days (Ex. A at 70–79, Ex. C). Petitioner filed a

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (ECF No. 26). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules

of Criminal Procedure (Ex. D at 130–46).  The trial court summarily denied the

motion on April 6, 2011 (*id.* at 147–50).  Petitioner filed a second Rule 3.800(b)(2)

motion on April 19, 2011 (Ex. E at 280–84).  On June 3, 2011, the trial court granted

the motion to the extent that Petitioner sought correction of his Criminal Punishment

Code scoresheet, but denied the motion to the extent Petitioner sought resentencing

(*id.* at 292–94).  Petitioner filed a third rule 3.800(b)(2) motion on July 7, 2011 (Ex.

F at 298–301).  The trial court summarily denied the motion on July 13, 2011 (*id.* at

302–03).

Petitioner, through counsel, appealed the judgment and sentence to the Florida

First District Court of Appeal ("First DCA"), Case No. 1D10-5081 (Ex. G).  The

First DCA affirmed the judgment per curiam without written opinion on April 4,

2012 (Ex. J).  *Witherspoon v. State*, 85 So. 3d 490 (Fla. 1st DCA 2012) (Table).  The

mandate issued April 20, 2012 (Ex. K).

On July 3, 2013, Petitioner's counsel filed a motion for post-conviction relief

in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal

Procedure (Ex. O at 1–17).  The state circuit court struck the motion as facially

insufficient, without prejudice to Petitioner's filing an amended motion (*id.* at 35–

36, 195).  Petitioner filed an amended motion on December 21, 2013 (*id.* at 198–

204).  The court held an evidentiary hearing on October 23, 2015 (*id.* at 232–94).

The court issued a final order denying the amended Rule 3.850 motion on October

30, 2015, relying upon the reasons stated on the record at the evidentiary hearing (*id.*

at 221–22).  Petitioner appealed the decision to the First DCA, Case No. 1D15-4968

(Ex. P).  The First DCA affirmed the decision per curiam without written opinion on

February 22, 2017 (Ex. S).  *Witherspoon v. State*, 230 So. 3d 436 (Fla. 1st DCA

2017) (Table).  The mandate issued March 10, 2017 (Ex. T).

Petitioner filed the instant federal habeas action on March 15, 2017 (ECF No.

1).

On May 8, 2017, Petitioner filed a successive Rule 3.850 motion in the state

circuit court (Ex. U at 3–36).  The circuit court denied the motion as untimely and

successive (*id.* at 37–40).  Petitioner appealed the decision to the First DCA, Case

No. 1D17-3099 (*see* Ex. U at 41; *see also* Ex. V).  The First DCA affirmed the

decision per curiam without written opinion on October 6, 2017 (Ex. W).

*Witherspoon v. State*, 235 So. 3d 824 (Fla. 1st DCA 2017) (Table).  The mandate

issued November 3, 2017 (Ex. X).

Petitioner filed the Second Amended Petition in this § 2254 proceeding on

May 14, 2018 (ECF No. 30).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.

*Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, *Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the

record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*,

513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner makes a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  *Anderson v. Harless*, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In *Anderson*, the Sixth Circuit Court of Appeals granted the habeas petition on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner

in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Anderson*, 459 U.S. at 7. On review by the Supreme Court, the Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, 513 U.S. 364. The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3] The Supreme Court explained, "[i]f a habeas petitioner wishes

---

[3] The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 513 U.S. at 365–66.

In *Baldwin v. Reese*, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). The *Baldwin* court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. With regard to this language, the Eleventh Circuit explained in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed.

> 2d 598 (1986)).  This is consistent with settled law established by the
> Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine
> requires a habeas applicant to do more than scatter some makeshift
> needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no

longer be litigated under state procedural rules is considered procedurally defaulted,

that is, procedurally barred from federal review.  *See Bailey v. Nagle*, 172 F.3d 1299,

1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally

defaulted if it was presented in state court and rejected on the independent and

adequate state ground of procedural bar or default.  *See Coleman v. Thompson*, 501

U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*,

269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be

procedurally defaulted under state law cannot be addressed by federal courts.");

*Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[4] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[5]  Second, the state court's decision on

the procedural issue must rest entirely on state law grounds and not be intertwined

with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be

adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must

be firmly established and regularly followed, that is, not applied in an arbitrary or

unprecedented fashion.  *Id.*

　　　To overcome a procedural default, the petitioner must show cause for the

default and prejudice resulting therefrom, or that the federal court's failure to reach

the merits of the claim would result in a fundamental miscarriage of justice.  *Tower*,

7 F.3d at 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment,

whether it be governmental interference or the reasonable unavailability of the

factual basis for the claim, must have prevented petitioner from raising the claim."

*McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)

(quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397

(1986)).  To satisfy the miscarriage of justice exception, the petitioner must show

that "a constitutional violation has probably resulted in the conviction of one who is

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.* Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. *See McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in *Schlup*, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; *see also House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

## IV.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "Where [sic] the jury instruction under "A Principle"</u> <u>[sic] was read to the jury and the Petitioner sentenced and convicted as such</u> <u>violates due process and equal protection."</u>

Petitioner contends he was denied due process and equal protection when the trial court read to the jury, without objection from defense counsel, the instruction on principal liability (ECF No. 30 at 7–8).  Petitioner contends the jury instruction was given in error, because the charging document did not charge him as a principal (*id.*).  Petitioner asserts if the instruction on principal liability had not been given, the jury possibly would not have found him guilty of at least one, if not all, charges (*id.*).  Petitioner asserts he presented Ground One in his Rule 3.850 motion (*id.* at 9).

Respondent contends to the extent Petitioner presents a due process claim based upon alleged trial court error, the claim was not presented to the state courts and is thus unexhausted (ECF No. 35 at 23).  Respondent argues Petitioner presented, as Issue III on direct appeal, a claim that the jury instruction on principal liability resulted in an ambiguous verdict, but Petitioner did not present the claim as a federal constitutional issue (*id.*).

Respondent further contends to the extent Petitioner presents a claim of ineffective assistance of trial counsel ("IATC"), based upon defense counsel's failure to object to the principal instruction, Petitioner exhausted the claim by presenting it in Ground 3 of his Rule 3.850 motion (ECF No. 35 at 24).  Respondent argues the state court's adjudication of the IATC claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based upon an

unreasonable determination of facts in light of the evidence in the state court record (*id.* at 24–26).

Petitioner did not file a reply, and thus did not respond to Respondent's exhaustion and procedural default arguments with respect to the claim of trial court error.

1.    Federal Due Process Claim Based Upon Trial Court Error

The state court record supports Respondent's exhaustion argument. Petitioner presented the following argument as Issue III on direct appeal

> The entry of judgment of conviction for armed kidnapping and armed robbery was fundamentally erroneous because the jury's verdict was ambiguous and therefore must be construed to support a finding of guilt for simple kidnapping and simple robbery.

(Ex. G at 28–29).   Petitioner argued that to support a conviction for armed kidnapping and armed robbery, the jury must make a finding that the defendant had actual possession of a weapon during the commission of the crime (*id.* at 28). Petitioner argued that the jury instruction on principal liability created an ambiguity in the jury's verdict, because it was unclear whether the jury found that Petitioner actually possessed a weapon during commission of the crimes, or whether he had "actual possession" because his principal had actual possession of a firearm (*id.*). Petitioner argued that the trial court was required to resolve ambiguity in the verdict

in the defendant's favor, so the trial court should have construed it as a verdict of guilt for simple kidnapping and simple robbery (*id.* at 28–29).

Petitioner's substantive argument did not cite in conjunction with his claim a federal source of law on which he relied, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim. Petitioner did not make even a passing reference to due process, fundamental fairness, a fair trial, federal law, or the United States Constitution. Similarly, Petitioner did not cite a single federal case; and the sole state case he cited did not cite to, or decide the claim on, federal grounds. The undersigned concludes that Petitioner did not "fairly present" a federal due process or equal protection claim in the state courts, as he now does in Ground One of his federal petition.

Petitioner is now barred by state procedural rules from returning to state court to present the claim of trial court error as a federal constitutional claim. *See Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned"); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Because further relief is not available in the state courts, the due process and equal protection claim is considered procedurally defaulted. Petitioner does not allege he is entitled to federal

review of the procedurally defaulted claim through any recognized exception to the procedural bar. Therefore, Petitioner is not entitled to relief on this claim.

    2.   <u>IATC</u>

As previously discussed, Respondent concedes Petitioner exhausted the IATC claim asserted in Ground One.

    a.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under *Strickland*, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms." *Strickland*, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th

Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do."  *Jones*, 436 F.3d at 1293 (citing *Chandler*, 218 F.3d at 1314–15 n.15).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  *Jones*, 436 F.3d at 1293 (citing *Strickland*,

466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies [sic] of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 695. Further, when the claimed error of counsel occurred at

the guilty stage of trial (instead of on appeal), *Strickland* prejudice is gauged against the outcome of trial, not on appeal.  *See Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) (citing *Strickland*, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

b.    Federal Review of State Court Decision

Petitioner was represented by counsel throughout the Rule 3.850 proceedings. As Ground 3 of Petitioner's Rule 3.850 motion, he claimed that trial counsel was ineffective for failing to properly object to the jury instruction on principal liability (Ex. J at 8–10). Petitioner alleged he was charged as the actual perpetrator of the offenses charged in the Information. He alleged after the State rested its case, the prosecutor requested a jury instruction on principal liability. Petitioner alleged trial counsel should have argued that it was erroneous to instruct the jury on principal liability, because the Information did not charge a principal theory, and the trial evidence did not support it. Petitioner further alleged trial counsel should have objected to the verdict, on the ground that it did not indicate on which alternative legal basis the jury found Petitioner guilty (i.e., as the actual perpetrator or as a principal), thus the jury's finding that Petitioner actually possessed a firearm could have been based upon an accomplice's actual possession.

The state circuit court held an evidentiary hearing on all of Petitioner's post-conviction claims (*see* Ex. O at 232–93). The court identified *Strickland* as setting forth the applicable legal standard (*id.* at 292). The court found that the verdict form included the language "actually possessed" in its specific question, as to each offense, as to whether the Defendant actually possessed a firearm during the commission of each offense, and the jury clearly indicated "Yes" on the verdict,

without expressing any confusion (*id.* at 290–91). The court further determined that the trial court used the standard jury instructions and verdict form approved by the state supreme court (*id.*). The court concluded that an objection by defense counsel "would not get very far" (*id.* at 290) and that the outcome of trial would not have been different if defense counsel had objected (*id.* at 290–91). Petitioner argued the issue on appeal to the First DCA (Ex. P at 20–27). The First DCA affirmed the circuit court's decision without written opinion (Ex. S).

Section § 2254(d) does not require a state court to give reasons before its decision may be deemed to have been "adjudicated on the merits." *See Richter*, 562 U.S. at 99. When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id.* The same rule applies when the state court addresses some but not all of the federal claims raised by a defendant. When a federal claim has been presented to the state court, and the state court opinion addresses some but not all of a defendant's federal claims, a rebuttable presumption arises on federal habeas review

that state court adjudicated all of the federal claims on the merits.  *See Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 (2013).

Further, where the relevant state court decision on the merits does not come accompanied with the state court's reasons, the federal court should "look through" the unexplained decision to the last related state court decision that does provide a relevant rationale.  *See Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018).  The federal court should then presume that the unexplained decision adopted the same reasoning.  *Id.*

With respect to the part of Petitioner's IATC claim concerning trial counsel's failure to object to the principal instruction on the ground that the Information did not charge a principal theory of liability, the state court did not give its reasons for rejecting this part of Petitioner's claim.  The state court's rejection could have been based upon the theory that an objection by counsel would have been meritless.  Under Florida law, there is no requirement that the charging document specifically allege that the defendant acted as a principal in order for the State to pursue, and the jury to be instructed on, principals.  *See State v. Larzelere*, 979 So. 2d 195, 215–16 (Fla. 2008).

Further, there was evidence adduced at Petitioner's trial to support the principal instruction.  The kidnapping and robbery charges stemmed from the armed

robbery of a Dollar Tree store on June 26, 2008. Petitioner and three accomplices were charged, but Petitioner was tried alone. At Petitioner's trial, Lyndon Williams testified he (Williams) was one of the perpetrators of the Dollar Tree robbery (Ex. B at 141). Williams testified he and Petitioner were best friends (*id.*). Williams testified he, Petitioner, Cory Carroll, and "M.J." a/k/a Korey Cole, met to discuss the robbery plan (*id.* at 142–44). Williams testified his role was to be the "lookout man" in the rear of the building (*id.* at143). He testified that all four men drove to the Dollar Tree (*id.*). Williams testified that Cory Carroll dropped off Petitioner and M.J. in front of the building (*id.* at 144). Williams testified he (Williams) got out on the side of the building and walked to the end of the building (*id.* at 144–45). Williams testified approximately 10-15 minutes later, Cory Carroll drove by (*id.* at 145). Williams testified he got back in the car with Carroll, and the two of them drove to Carroll's house (*id.* at 146). Williams testified he was angry because Carrol left Petitioner and M.J. at the Dollar Tree store (*id.* at 147). Williams testified approximately 20 minutes later, he got a ride from his girlfriend to pick up Petitioner and M.J. near the Tallahassee Lighting store (*id.* at 148–49). Williams testified when they all returned to Cory Carroll's house, Petitioner and M.J. gave him (Williams) some money, but he recalled that Cory Carroll did not get any money because everyone was mad at him for failing to pick up Petitioner and M.J. (*id.* at 150–51).

Cory Carroll testified he, Petitioner, Lyndon Williams, and Korey Cole, who goes by the nickname "M.J.," discussed the robbery and planned, "how to go in and who was going to go in which direction, and also where the car was going to be parked" (Ex. B at 105–06, 112). Carroll testified he was the driver (*id.* at 104–05). Carroll testified Petitioner was wearing black gloves, a black t-shirt, and a black scarf or "do rag" on his head "to keep his dreads from hanging down" (*id.* at 105, 111). Carroll testified he dropped off Lyndon Williams at the back of the Dollar Tree store, and dropped off Petitioner and M.J. one or two storefronts away from the Dollar Tree (*id.* at 108–09). Carroll testified he parked across the street, and lost visual contact with the others (*id.* at 109). Carroll testified he waited "a good 20 minutes" and then drove around the store, and Lyndon Williams came to the car and banged on the door (*id.* at 109–10). Carroll testified that by that time, the police were arriving at the parking lot, so he left (*id.* at 110).

Lakicia Hunter testified she was working as an assistant manager at the Dollar Tree on Apalachee Parkway on June 26, 2008 (Ex. B at 30–31). Hunter testified that a robbery occurred after the store was closed and while she and three other employees were waiting for an employee's mother to arrive (*id.* at 31–32). Hunter testified two black men ran up to the front door with guns as she and the other employees were leaving the store (*id.* at 32–33). Hunter testified the two men forced

her and the other employees back into the store and told them to "all get on the floor" (*id.* at 33).  Hunter testified the employees laid down at the front of the store (*id.* at 33).  She testified that the man who was pointing a gun at her seemed to have dreads with a black t-shirt around his hair and was wearing some "big shades" (*id.* at 33–34).  Hunter testified the other robber was wearing "a gray shirt and he had on a ski mask or something. Because you could tell he didn't have any hair" (*id.* at 34).  Hunter testified both robbers had guns (*id.* at 36, 43).  Hunter testified she was ordered to get up, go to the office, and open the safe (*id.*).  Hunter testified one of the robbers pointed his gun at her as she tried to open the safe (*id.*).  She testified:

> And the first time when I put the combination in, it didn't work.  And when it didn't work, I said, please don't shoot me.  And when I looked at him, that's when I recognized who he was or I knew that I had seen that face before.

(Ex. B at 36).  Hunter testified, "It was just like a familiar face.  I knew I had seen that face before." (*id.*).  Hunter identified Petitioner in court as the robber who pointed his gun at her (*id.* at 37).  She testified that Petitioner said, "Baby, I'm not going to shoot you." (*id.*).  Hunter testified the safe opened on the second attempt, and she handed Petitioner the money (*id.* at 37–38).  She testified she was then escorted to where the rest of the employees were lying down (*id.* at 38).  Ms. Hunter testified:

> After I got the money, he told us all—well, he took me back out to
> where everyone else was lying down and the guy had the gun on them
> and he told everybody to get up and run to the back.  I was in front of
> him, so he was behind me with his gun on me.  And we ran to the back.
> And then, when we got to the back almost near the door, he asked us to
> lay [sic] down again.

(Ex. B at 38–39).  Hunter testified at that point, one of the two robbers noticed a

surveillance camera and told the other robber to go back to get the monitor (*id.* at

39).  Hunter testified that Petitioner then made her get up again and go back to the

front of the store (*id.*).  Hunter testified Petitioner took the DVD recorder, left her in

the front of the store, and went back to the rear of the store where the others were

located (*id.* at 39–40).  Hunter testified both robbers asked her to open the back door

for them, and they left out of the back of the store (*id.* at 40–41).  Hunter testified

that when she opened the back door, she noticed that there was a third man outside

(*id.* at 40).  She testified that the third man took off running when Hunter opened the

back door (*id.*).

Ms. Hunter testified she later picked Petitioner out of a photo lineup when

asked to do so by police officers (Ex. B at 42).  Hunter testified she thought she had

gone to school with Petitioner, but one of the officers told her Petitioner did not go

to school with her (*id.*).  Hunter confirmed that both robbers had firearms (*id.* at 43).

On cross-examination, Hunter testified that Petitioner did not hold the gun on

her when they returned to the front of the store to take the video monitor off the wall

(Ex. B at 57–58). Hunter also testified Petitioner referred to the other robber as "M.J." (*id.* at 39, 57).

Felicia Thompson testified she was working as an employee of the Dollar Tree store with Jack Woodrum, Sheneika Lowe, and Lakicia Hunter (Ex. B at 61–62). Thompson testified that as she and the other employees were leaving the store sometime after 9:00 p.m., two black men pushed her and the three other employees back into the store (*id.*). Thompson testified one of the men had a small black "do rag on his head, tied up" (*id.*). Thompson testified this man also had a gun in his hand and she could feel it in her back (*id.* at 64–65). Thompson testified that Sheneika Lowe ran toward the back of the store (*id.* at 65–66). Thompson testified the other robber (the robber who was not holding a gun on her) said, "I know there's another one in here . . . [W]here's the other young lady" (*id.* at 66). Thompson testified that Ms. Lowe identified herself (*id.*). Thompson testified the robber with the "do rag" told her and Jack Woodrum not to move, and the other robber told Ms. Hunter to get off the floor and to in the office (*id.*). Thompson testified that after Mr. Hunter gave the robbers the money, the "other" robber took Ms. Lowe to the back of the store (*id.* at 67). Thompson testified the man with the "do rag" directed her and Jack to the back of the store (*id.* at 64–65, 67). Thompson testified she saw Ms. Lowe on her knees, and the other robber was holding a gun at the back of Lowe's

head (*id.* at 67). Thompson testified the employees were then ordered to the floor (*id.* at 65, 68). Thompson testified one of the other robbers went back to the front of the store with Ms. Hunter, but she did not know which one, because she was face down toward the floor (*id.* at 66, 69). Thompson testified each robber had a gun (*id.* at 68–69). On cross-examination, Thompson testified she did not recognize Petitioner (*id.* at 70).

Sheneika Lowe testified she was an employee of the Dollar Tree in June 2008, when the robbery occurred (Ex. B at 233). Lowe testified she was inside the store with three other employees, Jeff Woodrum, Lakicia Hunter, and Felicia Thompson (*id.*). She testified that as the employees unlocked the doors to leave, "[t]wo guys jumped out from around the corner, and was like [sic], get back in there, get back in there, laid us down, and asked for the manager" (*id.* at 234). Lowe testified:

> Once they got in, they asked for everybody to lay down and they asked for the manager. She introduced herself, said this is me. Then they walked her in. They took us in the back. And they forgot the tape or whatever, so they went back in the front. One of them took her [Ms. Hunter] back in the front. The other one had me in the back.

(Ex. B at 235). Lowe testified that while they were walking to the back of the store, one of the robbers told her not to look at him (*id.* at 236). Lowe testified that at one point, she attempted to make a phone call with her cell phone, but one of the robbers saw her and took her phone (*id.* at 239–40). Lowe testified she was five months

pregnant at the time, so instead of lying down, she was permitted to sit between the back door and the freezer with her face in the corner (*id.* at 235). Lowe testified one of the robbers pointed a gun in her back, and she could feel it touching her back (*id.* at 236, 241). Lowe testified she did not actually see the gun (*id.*). Lowe testified she could not see whether the robber who walked Ms. Hunter to the front of the store had a gun (*id.* at 241). Lowe testified she could see the back door open, and another man was at the back door (*id.* at 235).

Investigator Jeff Mahoney testified that he provided Lakicia Hunter a photo line-up, and she immediately identified one of the robbers (Ex. B at 172–75). Mahoney testified he asked Hunter, "Are you a hundred percent?" and she responded, "I'm a thousand percent" (*id.* at 175). Mahoney testified Ms. Hunter signed the photo of the person she identified and wrote "100%" (*id.* at 175–76). Investigator Mahoney testified that the picture Ms. Hunter identified was Petitioner's (*id.* at 176). Mahoney testified that officers obtained a search warrant for Petitioner's residence and Cory Carroll's residence, and they searched both residences (*id.* at 176–77). Mahoney testified officers recovered a nine millimeter Luger bullet from Cory Carroll's house (*id.* at 177).

Investigator Mahoney testified he interviewed Petitioner prior to execution of the search warrants (Ex. B at 177, 198–202). Mahoney testified Petitioner stated he

knew Lyndon Williams, Cory Carroll, and Korey Cole (*id.* at 199).   Mahoney testified Petitioner admitted he owned a nine millimeter Luger firearm (*id.*). Mahoney testified Petitioner stated the gun was currently at his residence, but it was previously stolen for a period of several months (*id.* at 199–200).

Investigator Robert Grasso testified he executed the search warrant at Petitioner's residence (Ex. B at 217–18).  Grasso testified he recovered the following items from Petitioner's residence:  (1) "Hi-Point" nine millimeter semiautomatic handgun, (2) holster from a Hi-Point nine millimeter handgun, (3) hard case for the Hi-Point handgun, (4) pawn receipt from Folmar's Gun and Pawn discovered inside the hard case, (5) $200 in currency, and (6) a "bank bill strap" marked "Premier Bank, Teller Number 43" (Ex. B at 218–19).

Jeff Foggy, a firearms examiner with the Florida Department of Law Enforcement, testified he test-fired the firearm recovered from Petitioner's residence (Ex. B at 229–31).  Foggy testified it was a Hi-Point nine millimeter Luger caliber semi-automatic pistol (*id.* at 231).  Foggy testified the firearm fired properly (*id.* at 229).

Officer Doug Kutchera testified he and his "K-9 partner," Kimbo, responded to the Dollar Tree to investigate the robbery (Ex. B at 81–82).  Kutchera testified he arrived at the Dollar Tree approximately 20 minutes after the robbery was reported

(*id.* at 83). Kutchera testified Kimbo picked up a scent and tracked it to a black or dark blue glove laying against a curb along some weeds (*id.* at 85–90). Kutchera testified the glove was dry, despite the fact that it had been raining heavily that day (*id.* at 86). Kutchera testified he collected the glove as evidence (*id.* at 91).

Jack Martin, a crime laboratory analyst with the Florida Department of Law Enforcement, testified he examined the glove for skin cells to possibly develop a DNA profile of the wearer of the glove (Ex. B at 94–97). Mr. Martin testified he recovered DNA material, but there were so many DNA contributors he was unable to include or exclude any contributor (*id.* at 97–100).

Based on the evidence adduced at trial, defense counsel's objection to the principal instruction would have been meritless. *See Roberts v. State*, 813 So. 2d 1016, 1017 (Fla. 1st DCA 2002) (when there is sufficient evidence adduced in the State's case to support the principal instruction, the trial court did not err by giving it, even if the defendant was not charged with aiding and abetting) (citing *State v. Roby*, 246 So. 2d 566 (Fla. 1971)); *see also Lopez v. State*, 833 So. 2d 283, 284 (Fla. 5th DCA 2002) (it is immaterial whether defendant was expressly charged as a principal so long as there was proof he was guilty of one of the acts denounced in the statute; the law of principals allowed defendant to be convicted of the main offenses regardless of whether he personally possessed a firearm, even if he could

not be given a minimum mandatory sentence). The state court reasonably rejected Petitioner's IATC claim with respect to trial counsel's failure to object to the principal instruction on the ground that the Information did not charge Petitioner as a principal. Therefore, Petitioner is not entitled to relief on this part of his IATC claim.

The state court also reasonably rejected Petitioner's IATC claim with respect to counsel's failure to object to the verdict, on the ground that it was ambiguous as to whether Petitioner actually possessed a firearm. The jury was instructed:

AGGRAVATION OF A FELONY BY CARRYING A FIREARM

If you find that the Defendant committed Kidnapping or False Imprisonment, and you also find beyond a reasonable doubt that during the commission of the crime the Defendant carried, displayed or used a firearm, you should designate this finding on the verdict form.

If you find the Defendant committed Kidnapping or Armed Robbery With A Firearm, and you also find beyond a reasonable doubt that during the commission of the crime, defendant actually possessed a firearm, you should also designate this finding on the verdict form.

A "firearm" is any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun.

To actually 'possess' a firearm means that the Defendant carried a firearm on his person or had a firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the crime.

(Ex. A at 51).

As the state court found, the jury clearly marked "Yes" in answer to the question "During the commission of the above-named offense did the Defendant actually possess a firearm?" with respect to all four of the kidnapping counts and the robbery count (Ex. A at 58–61). With respect to the kidnapping counts, the verdict form required the jury to answer that question <u>only</u> if it found Petitioner guilty of kidnapping or the lesser included offense of false imprisonment (*id.*). With respect to the robbery count, the verdict form required the jury to answer this question <u>only</u> if it found Petitioner guilty of robbery with a firearm; and the form included the lesser included offenses of robbery with a weapon, robbery, and theft (*id.* at 61–62).

The state court reasonably concluded that Petitioner failed to demonstrate a reasonable probability that the outcome of trial would have been different if defense counsel had objected to the verdict, on the ground that it was ambiguous as to whether Petitioner actually possessed a firearm.

To summarize, the due process part of Ground One (based upon the trial court's alleged error in giving the principal instruction and accepting the allegedly ambiguous verdict) is procedurally barred from federal review. Additionally, Petitioner has not demonstrated that the state court's adjudication of the IATC part of Ground One was contrary to or an unreasonable application of *Strickland*, or

based upon an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.    Ground Two: "Where [sic] the jury instructions of [sic] kidnapping was [sic] read to the jury and the Petitioner sentenced/convicted under such violates due process and equal protection."

Petitioner alleges there was no evidence that any of the employees of the Dollar Tree store were gagged, bound, hidden, or "locked away" (ECF No. 30 at 12–13). He further alleges there was no evidence that any door was shut, or lights extinguished during the robbery (*id.* at 12). Petitioner alleges the evidence was conflicting as to which robber escorted Ms. Hunter to the office and which robber led the other employees to the back of the store (*id.* at 11). Petitioner alleges the robber's moving of Ms. Hunter was to accomplish the taking of the money from the office and the taking of the surveillance equipment from the front of the store (*id.* at 11–12). Petitioner alleges the evidence showed that the other three employees were "merely taken into the path of the identified 'escape route'" (*id.* at 12). Petitioner alleges Ms. Thompson and Ms. Lowe testified that after the other robber moved them to the back of the store, they could still see the front "had they been allowed to simply turn around" (*id.*). Petitioner contends the moving of the employees was inconsequential or incidental to the robbery, and none of the acts of moving the employees were independent of the robbery; therefore, he could not be lawfully tried

or convicted of both the robbery and each kidnapping (*id.* at 11, 13). Petitioner contends the trial court violated his due process rights by instructing the jury on kidnapping (*id.*). Petitioner alleges defense counsel was ineffective for making a "boilerplate" motion for JOA on the kidnapping counts and failing to object to the court's instructing the jury on kidnapping (*id.*). Petitioner asserts he presented Ground Two on direct appeal and in his Rule 3.850 motion (*id.* at 13–14).

Respondent contends to the extent Petitioner presents a due process claim based upon alleged trial court error, the claim was not presented to the state courts and is thus unexhausted (ECF No. 35 at 27–28). Respondent argues Petitioner presented the following related issues on direct appeal:

> ISSUE I
> The trial court erred in denying appellant's motion for judgment of acquittal on four kidnapping counts because the slight movement of the victims inside the store, without more, was legally insufficient to establish the confinement, abduction or imprisonment necessary for kidnapping.

> ISSUE II
> The trial court erred reversibly in responding to the jury's question requesting explanation of the phrase "inherent in the nature of the felony;" the trial court's response effectively reduced the state's burden to prove that the confinement, abduction or imprisonment must not be of the kind inherent in the nature of the felony.

(*see* ECF No. 35 at 27–28).  Respondent contends Petitioner did not present either issue as a federal constitutional issue, and any attempt to now do so is procedurally barred (*id.*).

Respondent contends Petitioner's related IATC claims are also unexhausted and procedurally barred.  Respondent contends Petitioner presented an IATC claim as Ground 2 of his Rule 3.850 motion, based upon defense counsel's failure to object to the trial court's response to the jury's question requesting explanation of the phrase "inherent in the nature of the felony" in the kidnapping instructions (*id.* at 28).  Respondent asserts the court held an evidentiary hearing on this IATC claim, therefore, Petitioner was procedurally required to file an initial brief to obtain review of the circuit court's denial of the claim (*id.* at 28–29).  Respondent contends Petitioner filed an initial brief, but did not include argument on Ground 2 and thus waived appellate review of the claim (*id.* at 29).  Respondent contends because Petitioner failed to invoke one complete round of Florida's established appellate review process, and because state procedural rules now bar Petitioner from returning to state court to properly exhaust his claim, this part of Ground Two is procedurally defaulted (*id.* at 30).

Respondent contends to the extent Petitioner is challenging trial counsel's failure to make more than a "boilerplate" motion for JOA on the kidnapping counts,

Petitioner presented this claim as Ground 1 of his successive Rule 3.850 motion, but the court denied the motion as untimely and successive, which are firmly established and regularly followed state procedural grounds (*id.* at 31). Respondent contends this aspect of Ground Two is thus not properly exhausted and procedurally barred (*id.* at 31–32).

Petitioner did not file a reply, and thus did not respond to Respondent's exhaustion and procedural default arguments.

1. Federal Claim Based Upon Trial Court Error

The state court record supports Respondent's exhaustion and procedural bar arguments. As Respondent notes, Petitioner presented the following two issues on direct appeal (among others):

ISSUE I
The trial court erred in denying appellant's motion for judgment of acquittal on four kidnapping counts because the slight movement of the victims inside the store, without more, was legally insufficient to establish the confinement, abduction or imprisonment necessary for kidnapping.

ISSUE II
The trial court erred reversibly in responding to the jury's question requesting explanation of the phrase "inherent in the nature of the felony;" the trial court's response effectively reduced the state's burden to prove that the confinement, abduction or imprisonment must not be of the kind inherent in the nature of the felony.

(Ex. G at 17, 22).  Petitioner's substantive argument with respect to each claim did not cite a federal source of law on which he relied, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim (*see id.* at 17–21, 22–27).    Petitioner did not make even a passing reference to due process, fundamental fairness, a fair trial, federal law, or the United States Constitution. Similarly, Petitioner did not cite a single federal case; and the state cases he cited did not cite to, or decide the respective claim on, federal grounds.  The undersigned concludes that Petitioner did not "fairly present" a federal due process or equal protection claim in the state courts, as he now does in Ground Two of his federal petition.

Petitioner is now barred by state procedural rules from returning to state court to present the claim of trial court error as a federal constitutional claim.  *See Hall*, 823 So. 2d at 763; Fla. R. Crim. P. 3.850(c).  Because further relief is not available in the state courts, the due process and equal protection claim based upon trial court error is considered procedurally defaulted.  Petitioner does not allege he is entitled to federal review of the procedurally defaulted claim through any recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to relief on this claim.

2.    <u>IATC</u>

The only IATC claim presented in Petitioner's Rule 3.850 motion that is remotely related to the IATC issue presented in Ground Two was Ground 2. Petitioner contended defense counsel was ineffective for failing to properly object to the court's explanation to the jury, in response to the jury's asking the court to clarify part of the kidnapping instruction (specifically, the part which stated that in order to constitute kidnapping, the confinement, abduction, or imprisonment "must not be the kind inherent in the nature of the felony") (Ex. O at 6–7, *see also* Ex. A at 45). The post-conviction court held an evidentiary hearing on all of Petitioner's post-conviction claims and denied all of them (Ex. O at 232–94).

The Florida Rules of Appellate Procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief. *See* Fla. R. App. P. 9.141(b)(3); *see also Pennington v. State*, 34 So. 3d 151, 153 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion). It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for review and are waived. *See Gamble v. State*, 877 So. 2d 706 (Fla. 2004); *Reed v. State*, 875 So. 2d 415 (Fla. 2004) (same); *Cooper v. State*, 856 So. 2d 969, 977 n.7 (Fla. 2003); *Marshall v. State*, 854 So. 2d 1235, 1252

(Fla. 2003) *Sweet v. State*, 810 So. 2d 854, 870 (Fla. 2002); *Johnson v. State*, 769 So. 2d 990, 1005–06 (Fla. 2000); *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999). Both of the state procedural rules are firmly established and regularly followed procedural rules for purposes of federal habeas.

In Petitioner's brief on appeal of the circuit court's denial of his Rule 3.850 motion, Petitioner did not present any argument concerning the court's denial of Ground 2 (*see* Ex. P). Therefore, Petitioner waived appellate review of the claim, and thus did not properly exhaust it in the state courts. Petitioner cannot now take a second appeal from the denial of his Rule 3.850 motion to attempt to successfully exhaust the IATC claim presented in Ground Two; therefore, the claim is procedurally defaulted.

The part of Ground Two which faults defense counsel for making a "boilerplate" motion for JOA on the kidnapping counts, thus permitting those counts to go to the jury, was presented as Ground 1 of Petitioner's successive Rule 3.850 motion (Ex. U at 8–11). The circuit court denied the motion on the firmly established and regularly followed procedural rules regarding time limits for filing a Rule 3.850 motion and the filing of second or successive Rule 3.850 motions (Ex. U at 37–40). *See* Fla. R. Crim. P. 3.850(b), (h). The First DCA affirmed the circuit court's application of the procedural bars (Ex. W). Petitioner does not allege he is entitled

to federal review of the procedurally defaulted IATC claim through any recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to relief on this IATC claim.

To summarize, Petitioner did not properly exhaust any of the federal claims presented in Ground Two (claims of trial court error and claims of IATC); therefore, they are procedurally barred from federal review.  Petitioner is not entitled to relief on Ground Two.

C.    Ground Three:  "Where [sic] the evidence that was used at Petitioner's trial was prejudicial such [sic] violated due process and equal protection."

Petitioner alleges that the admission of the following evidence deprived him of a fair trial because it was irrelevant, circumstantial, and contradictory:  (1) evidence that law enforcement discovered a glove near the Dollar Tree store after the robbery, (2) evidence that a nine millimeter gun, gun box, gun holster, cash strap, and pawn shop receipt were discovered in Petitioner's residence, and (3) evidence that a nine millimeter bullet was discovered in Cory Carroll's residence (ECF No. 30 at 15–17).  Petitioner concedes the evidence was lawfully discovered and seized by law enforcement (*id.* at 16).  Petitioner contends defense counsel was ineffective for failing to object to admission of the evidence on the ground that it was irrelevant, circumstantial, and contradictory (*id.* at 15–17).  Petitioner asserts he did not present

Ground Three on direct appeal, but he presented it in his Rule 3.850 motion (*id.* at 17–18).

Respondent contends to the extent Petitioner presents a due process claim based upon alleged trial court error in admitting the evidence, the claim was not presented to the state courts and is thus unexhausted and procedurally barred (ECF No. 35 at 33).

Respondent contends Petitioner's related IATC claim is also unexhausted and procedurally barred. Respondent contends Petitioner presented an IATC claim based upon counsel's failure to object to admission of evidence as Ground 5 of his amended Ruled 3.850 motion (*id.* at 34). Respondent asserts the court held an evidentiary hearing on the claim; therefore, Petitioner was procedurally required to file an initial brief to obtain review of the circuit court's denial of the claim (*id.* at 34–35). Respondent contends Petitioner filed an initial brief, but he did not include argument on Ground 5 and thus waived appellate review of the claim (*id.* at 35). Respondent contends because Petitioner failed to invoke one complete round of Florida's established appellate review process, and because state procedural rules now bar Petitioner from returning to state court to properly exhaust his claim, this part of Ground Three is procedurally defaulted (*id.* at 35–36).

Petitioner did not file a reply, and thus did not respond to Respondent's exhaustion and procedural default arguments.

### 1.   Federal Claim Based Upon Trial Court Error

The state court record supports Respondent's exhaustion and procedural bar arguments.  On direct appeal, Petitioner did not present any challenge to the admission of evidence (*see* Ex. G).  Petitioner is now barred by state procedural rules from returning to state court to present such a challenge.  *See Hall*, 823 So. 2d at 763; Fla. R. Crim. P. 3.850(c).  Because further relief is not available in the state courts, the due process and equal protection claim based upon the allegedly erroneous admission of evidence is considered procedurally defaulted.  Petitioner does not allege he is entitled to federal review of the procedurally defaulted claim through any recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to relief on this claim.

### 2.   IATC

As Ground 5 of Petitioner's amended Rule 3.850 motion, Petitioner contended defense counsel was ineffective for failing to properly object to admission of the gun, holster, gun box, money, cash strap, bullet, and cell phone records (Ex. O at 199–200).  As previously noted, the post-conviction court held an evidentiary

hearing on all of Petitioner's post-conviction claims and denied all of them (Ex. O at 232–94).

In Petitioner's brief on appeal of the circuit court's denial of his amended Rule 3.850 motion, Petitioner did not present any argument concerning the court's denial of Ground 5 (*see* Ex. P).  For the reasons discussed *supra* in Ground Two, Petitioner waived appellate review of the claim, and thus did not properly exhaust it in the state courts.  Moreover, Petitioner cannot now take a second appeal from the denial of his Rule 3.850 motion to attempt to successfully exhaust the IATC claim presented in Ground Two; therefore, the claim is considered procedurally defaulted.

To summarize, Petitioner did not properly exhaust any of the federal claims presented in Ground Three; therefore, they are procedurally barred from federal review.  Petitioner is not entitled to relief on Ground Three.

D.   <u>Ground Four:   "IAC where [sic] counsel failed to object to the misconduct of the prosecutor renders [sic] a violation of due process and equal protection."</u>

Petitioner alleges the prosecutor committed "intrinsic fraud," and made improper and inflammatory statements and comments, but defense counsel failed to object (ECF No. 30 at 19–21).  Petitioner identifies two comments by the prosecutor which allegedly required action by defense counsel.   The first comment was the prosecutor's reference to the accomplices (Lyndon Williams and Cory Carroll)

"making a deal with a demon to get the devil" (*id.* (citing to page 360 of the trial transcript)). Petitioner alleges this comment was an admission by the prosecutor that both accomplices had made deals with the State, even though both accomplices testified they had not made any "plea deal" and that they were merely hoping for a favorable sentence in exchange for their testimony (*id.*). Petitioner alleges this alleged fraud rendered jury instructions 3.9(4) and 3.9(6) inapplicable or null and void (*id.*).[6] Petitioner alleges this comment was also inflammatory, because the prosecutor "gave the petitioner the worst label known to man" (*id.*).

Petitioner alleges the second improper comment was made when the prosecutor concluded the first part of his closing argument with the following:

> And so, in light of all that evidence, the question for you really becomes, and this is hard for jurors sometimes, are you willing to look across the courtroom into the face of someone who terrorized other citizens in this town and, without fear or hesitation or doubt yourself [sic], just say, William Witherspoon, you're guilty and we know it.

(ECF No. 30 at 20 (citing to page 346 of the trial transcript)).

---

[6] Instruction 3.9 is the Florida Standard Jury Instruction regarding Weighing the Evidence. Paragraph 4 instructs the jury to consider, "Did the witness have some interest in how the case should be decided?" Fla. Standard Jury Instructions in Criminal Cases, Ch. 3.9. Paragraph 6 instructs the jury to consider, "Has the witness been offered or received any money, preferred treatment, or other benefit in order to get the witness to testify?" *Id.* The trial court gave both instructions during Petitioner's trial (Ex. A at 53).

Petitioner alleges if defense counsel had objected to the prosecutor's comments, the trial court would have granted a mistrial (ECF No. 30 at 21). Petitioner asserts he presented Ground Four in his Rule 3.850 motion (*id.* at 22).

Respondent contends Petitioner exhausted only one of part of Ground Four, that is, defense counsel's failure to object to the prosecutor's comment that "sometimes you have to make a deal with the demon to get the devil" (ECF No. 35 at 38–39). Respondent contends the state court's adjudication of that claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 40–44).

Respondent contends the other part of Ground Four, i.e., the IATC claim based upon counsel's failure to object to the prosecutor's asking the jury to be "willing to look across the room into the face of someone who terrorized other citizens in this town and without fear, hesitation or doubting yourself, just say, William Witherspoon, you're guilty and we know it," was not presented to the state courts and thus was not properly exhausted (ECF No. 35 at 39).

The state court record supports Respondent's exhaustion defense with respect to the IATC claim based upon defense counsel's failure to object to the prosecutor's asking the jury to be "willing to look across the room into the face of someone who terrorized other citizens in this town and without fear, hesitation or doubting

yourself, just say, William Witherspoon, you're guilty and we know it." Petitioner did not present this argument in his Rule 3.850 motion or at the post-conviction evidentiary hearing. Therefore, this IATC claim is unexhausted. Further, any attempt to return to state court to exhaust the IATC claim would be futile, as it would be subject to dismissal as untimely and successive. *See* Fla. R. Crim. P. 3.850(b), (h). Because Petitioner has not alleged, let alone shown, he is entitled to federal review of this claim through any recognized exception to the procedural bar, he is not entitled to relief on this sub-claim of Ground Four.

As Respondent concedes, Petitioner exhausted the part of Ground Four which alleges defense counsel was ineffective for failing to object to the prosecutor's comment that "sometimes you have to make a deal with the demon to get the devil." Petitioner presented the issue at the post-conviction evidentiary hearing and on appeal from the denial of post-conviction relief. Therefore, the court will determine whether Petitioner has satisfied § 2254(d) with respect to this claim.

      1.    Clearly Established Federal Law

The *Strickland* standard, set forth *supra*, governs this claim.

      2.    Federal Review of State Court Decision

Petitioner presented this claim as Ground 4 of his Rule 3.850 motion (Ex. L at 6). The state circuit court adjudicated the claim as follows:

As to the comments by Mr. Prince [the prosecutor] of dealing with the demon to get the devil, that was more, as Mr. Evans [the State's post-conviction counsel] points out, and I think that is accurate. When you look at it, he didn't call him the devil, it was just a form of statement. Maybe it was not the best in the world but it was not like the cases that were cited here where they specifically called the defendant a mad man or a devil. Oftentimes you hear that used, you have to dance with the devil or the devil is in the details. You're not calling the person the devil, that is a form of speech. And that's what I took that to be, that you have to deal with the demon to get the devil.

So I don't think that that rose to a level that would affect the confidence in the outcome of the case.

(Ex. O at 292). Petitioner argued the issue on appeal to the First DCA (Ex. P at 28–

34). The First DCA affirmed the circuit court's decision without written opinion

(Ex. S).

Under Florida law, the standard for reviewing prosecutorial comments is the

following:

Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

*Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982) (quoting *Darden v. State*, 329 So. 2d

287, 289 (Fla. 1976)) (other citations omitted). This state rule is essentially the same

as the federal due process standard governing allegedly improper argument by the prosecution. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). Further, a prosecutor may reply to remarks, comments or assertions made by defense counsel. *See United States v. Young*, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted). The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" *Jones v. State*, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting *Bertolotti v. State*, 476 So. 2d 130 (Fla. 1985)).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." *Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper;  and  (2)  the  comments  must  have  rendered  the  trial fundamentally unfair.  *See United States v. Eyster*, 948 F.2d 1196 1206 (11th Cir. 1991) (citations omitted); *Dessaure v. State*, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

At Petitioner's trial, the prosecutor gave first and last closing arguments, with defense counsel's argument in between.  The allegedly objectionable comment was made during the prosecutor's last closing argument.  Prior to the prosecutor's comment, defense counsel had argued the following:

> Now, the other two—well, actually three witnesses.  We're talking about Cory Carroll.  We're talking about Lyndon Williams. Cory Carroll, it's just amazing to me how Cory Carroll was up there giving you all pretty much a primer, almost a talk on how the robbery went down.  Yes, we wanted to make sure now, what is—and the judge has already indicated to you in his jury instructions what you're to take with regard to assessing and determining the credibility of a witness.
>
> Cory Carroll made no doubt, yes, I wanted a deal.  Mr. Prince [the prosecutor] has said, oh, well, he didn't know he was getting a deal at the time that he made his initial statement.  I would tender to each and every one of you jurors that you know, I know, and I know for a fact, but  I'm sure you know, even though you're not in the system, that

when an officer arrests a suspect, the first thing out of their mouth is, if you want to help yourself, help me.

They don't say, I'll promise you'll only get five years because as, Mr. Prince said, officers can't promise you you'll get five years. . . . .

One of the investigators, I'm not sure exactly which one, indicated that he told the defendants, if you help me, you help yourself, you help me, you help yourself. So my point is that Mr. Cory Carroll has reason to come in here and testify against William Witherspoon.

Not only that, Landon Williams—or Lyndon Williams. Lyndon Williams said, I'm his friend, I'm his best friend. If he was his best friend, why is he testifying? The reason he's testifying, my supposition to the jury or my way that the evidence reads, is because of the fact that he's saying that my child's mother is possibly going to be arrested, even though she hasn't been arrested, she, from what he said, is a correctional officer, there's no—there's a possibility that she would lose her job and get arrested, which is the same reason that she testified. She's Lyndon Williams' baby's mama. Even though she testified that she's not seeing Lyndon Williams anymore, I mean, she has reason, and that's what I'm presenting to you, to back up his story.

(Ex. B at 351–53).

The prosecutor responded with the following comments:

Before we get to the substantive law and how the facts fit into the substantive law regarding reasonable doubt, I need to respond briefly to a couple of things that Mr. Black [defense counsel] said. . . . .
Like we talked about in jury selection, there's three basic ways in which reasonable doubt can arise. The first is the evidence.

In this case, you heard testimony from co-defendants. If it were just the co-defendants, guys who were expecting and hoping for a deal down the road, we wouldn't be here. But the simple fact is every piece of evidence you heard regarding the material issues in this case, which

is did this guy commit the robbery and kidnapping, support what they said. Nothing, no evidence contradicted them on the material facts in issue.

Mr. Black pointed out that they're hoping to get a deal, they're looking to get a deal. Now, a more experienced prosecutor once said that sometimes you have to make a deal with the demon to get the devil. They were less culpable. One was a lookout. One was the getaway driver. Neither of them stuck guns in people's faces. Neither of them held a pregnant woman on the floor with a gun to the back of their head. Sometimes you have to make a deal with a demon to get the devil.

. . . .

If you look on Page 10 of your jury instructions, Judge Hankinson has given you a tool box. And it's a list of factors that you can use in considering and weighing the credibility of the witnesses' testimony and the other evidence that was presented to you.

. . . .

The next thing that we have to consider is who has an interest in the case. . . .

. . . .

How about Lyndon Williams, what's his interest in the case? As he testified, Mr. Witherspoon was his best friend. And there was a marked difference, I think you'll recall, between Mr. Carroll's body language and Mr. Williams' body language. Mr. Carroll testified, he did what he had to do, and he was fine. Mr. Williams was visibly pained to be talking to you. He couldn't make eye contact with me and he sure couldn't make eye contact with his best friend. He didn't want to be here. He didn't want to do this. But he knew he had to do it. It was in his best interest. He had to do it although he didn't want to. You heard him cursing on the way out of the courtroom.

. . . He was upset because he had to testify against his best friend. And, strangely enough, that makes his testimony even more credible. When somebody honestly gives testimony they don't want to give, that should make that testimony more credible to you.

(Ex. B at 358–61, 365–66).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (Ex. B), the undersigned concludes—as did the state circuit court and the First DCA—that Petitioner failed to show a reasonable probability the outcome of trial would have been different if defense counsel has objected to the comment, "[s]ometimes you have to make a deal with a demon to get the devil." The analogy acknowledged that the jury may view the testimony of Mr. Carroll and Mr. Williams with skepticism because they were accomplices in the crimes, even though they played lesser roles.[7] Further, the "make a deal with a demon to get the devil" comment was isolated, and it was not the type of "vituperative or pejorative characterizations of a defendant," or "needless sarcasm," revealing that the prosecutor has "abandoned any semblance of professionalism," which would warrant a mistrial. *See Gore v. State*, 719 So.2d 1197, 1201 (Fla. 1998). The state court reasonably concluded that the comment did

---

[7] The jury was given the standard instruction on accomplice testimony:

> You should use great caution in relying on the testimony of a witness who claims to have helped Mr. Witherspoon commit a crime. This is particularly true when there is no other evidence tending to agree with what the witness says about Mr. Witherspoon.

> However, if the testimony of such a witness convinces you beyond a reasonable doubt of the Mr. Witherspoon's guilt, or the other evidence in the case does so, then you should find Mr. Witherspoon guilty.

(Ex. A at 52).

not so infect the trial with unfairness as to suggest that the verdict reflected an emotional response to Petitioner rather than a logical analysis of the evidence in light of the applicable law. *See, e.g., Moore v. State*, 820 So. 2d 199, 208 (Fla. 2002) (concluding that the prosecutor's two comments characterizing the defendant as "the devil" were improper, but too isolated to show ineffective assistance of counsel); *Hannon v. State*, 941 So. 2d 1109, 1143–44 (Fla. 2006) (even assuming trial counsel's performance was deficient, as element of ineffective assistance claim, during closing arguments of guilt phase of capital murder trial, in failing to object to prosecutor's comments that State had "made a deal with the sinner to get to the devil," defendant was not so prejudicial as to vitiate the entire trial).

Petitioner failed to demonstrate that the state court's adjudication of the exhausted part of Ground Four (i.e., the IATC claim based upon defense counsel's failure to object to the "deal with a demon to get the devil" comment) was contrary to or an unreasonable application of *Strickland*. And Petitioner failed to overcome the procedural bar to the unexhausted part of Ground Four (i.e., the IATC claim based upon defense counsel's failure to object to the prosecutor's comment about the jury's willingness to make a finding of guilt). Therefore, Petitioner is not entitled to federal habeas relief on Ground Four.

E.    Ground Five:  "Where [sic] given jury instructions on the charges of kidnapping only tended to confuse the jury, and the court explanation did not

cure/clear confusion, the Petitioner was divest [sic] of due process and equal
protection."

Petitioner alleges the jury was confused about the kidnapping instruction,
specifically, the part of the instruction which stated, "In order to be kidnapping, the
confinement, abduction, or imprisonment . . . must not be of the kind inherent in the
nature of the felony" (ECF No. 30 at 23–25).  Petitioner alleges the jury asked for
clarification about the definition of "inherent" (*id.*).  Petitioner alleges the court, over
defense counsel's objection, answered the jury's question by stating that the conduct
"must go beyond what is necessarily involved in a robbery" (*id.* at 14).  Petitioner
alleges the jury was still confused even after the court's answer, as evidenced by the
fact that they found him guilty of kidnapping Ms. Hunter, but Petitioner concedes
the jury could have applied the principal theory of liability in finding him guilty of
Ms. Hunter's kidnapping (*id.* at 24).  Petitioner alleges if the court had provided a
better explanation, it is possible that the jurors would have found Petitioner not guilty
of each of the kidnapping counts (*id.* at 24–25).  Petitioner contends his current
incarceration is due to this "fundamental miscarriage of justice" (*id.* at 25).  He
asserts he presented Ground Five in his Rule 3.850 motion (*id.*).

Respondent contends to the extent Petitioner presents a due process claim
based upon alleged trial court error, the claim was not presented to the state courts
and is thus unexhausted (ECF No. 35 at 45).  Respondent argues Petitioner

presented, as Issue II on direct appeal, a claim that the trial court erred in its response to the jury's question for clarification of the kidnapping instruction, but Petitioner did present the claim as a federal constitutional issue (*id.*).

Respondent contends to the extent Petitioner presents an IATC based upon defense counsel's failure to object to the court's response to the jury's question, Petitioner presented the claim as Ground 2 of his Rule 3.850 motion (ECF No. 35 at 45).  Respondent asserts the court held an evidentiary hearing on the claim, therefore, Petitioner was procedurally required to file an initial brief to obtain review of the circuit court's denial of the claim (*id.* at 45–46).  Respondent contends Petitioner filed an initial brief, but did not include argument on Ground 2 and thus waived appellate review of the claim (*id.* at 46–47).  Respondent contends because Petitioner failed to invoke one complete round of Florida's established appellate review process, and because state procedural rules now bar Petitioner from returning to state court to properly exhaust his claim, this part of Ground Five is procedurally defaulted (*id.*).

### 1.    Federal Claim Based Upon Trial Court Error

The state court record supports Respondent's exhaustion argument.  Petitioner presented the following argument as Issue II on direct appeal

> The trial court erred reversibly in responding to the jury's question requesting explanation of the phrase "inherent in the nature of the

> felony;" the trial court's response effectively reduced the state's burden
> to prove that the confinement, abduction or imprisonment must not be
> of the kind inherent in the nature of the felony.

(Ex. G at 22–27). Petitioner's substantive argument did not cite in conjunction with his claim a federal source of law on which he relied, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim. Petitioner did not make even a passing reference to due process, fundamental fairness, a fair trial, federal law, or the United States Constitution. Similarly, Petitioner did not cite a single federal case; and the state cases he cited did not cite to, or decide the claim on, federal grounds.[8] The undersigned concludes that Petitioner did not "fairly present" a federal due process or equal protection claim in the state courts, as he now does in Ground Five of his federal petition.

Petitioner is now barred by state procedural rules from returning to state court to present the claim of trial court error as a federal constitutional claim. *See Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned"); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief

---

[8] One of the state cases upon which Petitioner relied, *Mobley v. State*, 409 So. 2d 1031 (Fla. 1982), cited a United States Supreme Court Case, but it did so in its discussion of a different issue (i.e., a claim that the trial court's limitation on the defendant's cross-examination of a witness violated the defendant's Sixth Amendment right to confront his accusers). *See Mobley*, 409 So. 2d at 1038 (citing *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). Petitioner's citation to *Mobley* did not alert the state court to the federal nature of his challenge to the trial court's response to the jury's request for clarification regarding the kidnapping instruction.

based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Because further relief is not available in the state courts, the due process and equal protection claim based upon trial court error is considered procedurally defaulted.

2.    IATC

As Ground 2 of Petitioner's Rule 3.850 motion, Petitioner contended defense counsel was ineffective for failing to properly object to the trial court's response to the jury's request for explanation of part of the kidnapping instruction (Ex. O at 6– 7). As previously noted, the post-conviction court held an evidentiary hearing on all of Petitioner's post-conviction claims and denied all of them (*id.* at 232–94).

In Petitioner's brief on appeal of the circuit court's denial of his Rule 3.850 motion, Petitioner did not present any argument concerning the circuit court's denial of Ground 2 (*see* Ex. P). For the reasons discussed *supra* in Ground Two, Petitioner waived appellate review of the claim, and thus did not properly exhaust it in the state courts. Moreover, Petitioner cannot now take a second appeal from the denial of his Rule 3.850 motion to attempt to successfully exhaust the IATC claim presented in Ground Five; therefore, the claim is considered procedurally defaulted.

Petitioner did not properly exhaust any of the federal claims presented in Ground Five; therefore, they are procedurally barred from federal review. Further,

Petitioner's passing reference to a "fundamental miscarriage of justice" falls far short of satisfying *Schlup*'s actual innocence standard to obtain federal review of the claim. Therefore, Petitioner is not entitled to relief on Ground Five.

F.    <u>Ground Six:</u>  "Where [sic] the Petitioner was unable to confront the named victim of Count Two prior to him being found guilty of the offense charged violates due process and equal protection."

Petitioner alleges Count II of the Information charged him with kidnapping Jack Woodrum (ECF No. 30 at 27–29). Petitioner alleges neither the State nor the defense called Mr. Woodrum as a witness at trial (*id.*). Petitioner contends Woodrum's testimony would have clarified some discrepancies in the testimony of two of the State's witnesses (*id.* at 28). Petitioner alleges Mr. Woodrum "could have possibly provided" testimony from which the jury could infer that a kidnapping did not take place, and Woodrum "could have possibly" provided testimony that caused the jury to use its "pardoning power" (*id.*). Petitioner also alleges Mr. Woodrum's testimony was necessary to allow the jury to assess "his demeanor or character" (*id.*). Petitioner contends the jury wanted to hear from Mr. Woodrum, as evidenced by the fact that the jury inquired, "Is there a statement/sworn affidavit by Jack Woodrum? Otherwise, is there a police report available for our review that identifies or references Jack Woodrum?" (*id.*; *see also* Ex. C at 380). Petitioner contends defense counsel was ineffective for failing to object to the court's submitting Count II to the

jury, and failing to move the strike the verdict or arrest the judgment on Count II, based upon the absence of Mr. Woodrum's testimony (ECF No. 30 at 28–29). Petitioner asserts he presented Ground Six in the Rule 3.850 motion (*id.* at 29).

Respondent contends Petitioner did not present Ground Six to the state courts; therefore, it is unexhausted (ECF No. 35 at 49).

The state court record demonstrates that Petitioner did not present the state courts with a due process claim or an IATC claim relating to the absence of testimony from Jack Woodrum (*see* Ex. G, Ex. O at 1–17, 198–201, Ex. U at 3–27). Therefore, Ground Six is unexhausted.  Any attempt to return to state court to exhaust the claims would be futile, as Petitioner cannot take a second direct appeal, and another Rule 3.850 motion would be subject to dismissal as untimely and successive under Rule 3.850(b), (h).  Therefore, Ground Six is procedurally barred from federal review.

Petitioner has not alleged he is entitled to review under any recognized exception to the procedural bar.  Therefore, he is not entitled to habeas relief on Ground Six.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that

party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to substitute Mark S. Inch for Julie Jones as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the Second Amended Petition (ECF No. 30) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>14th</u> day of May 2019.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

    **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**